**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ATEFEH NOORI et al.,

       *Plaintiffs*,

   v.

ANTONY J. BLINKEN et al.,

       *Defendants*.

Civil Action No. 23-1463 (TJK)

## <u>MEMORANDUM OPINION</u>

Atefeh Noori seeks to have her foreign national father, Amanollah Noorijoshaghani, join her in the United States from Iran.  So in April 2022, he filed an immigrant visa application.  In February 2023, he received an interview with the relevant U.S. embassy.  But his application was then refused, pending further administrative processing.  Three months later, Noori and her father sued, arguing that Defendants have unreasonably delayed resolving the visa application, and seeking to compel them to complete that processing and issue a final decision.  Defendants move to dismiss on several grounds.  For the reasons explained below, the Court will grant the motion and dismiss the case for failure to state a claim.

## I.    Background

A U.S. citizen who wishes to bring her foreign national relative to the United States must file a Petition for Alien Relative (Form I-130) with the United States Citizenship and Immigration Services ("USCIS").  *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1).  Upon approval of the petition, USCIS sends the application to the State Department's processing center.  *See* 8 C.F.R. § 204.2(a)(3).  The relative then submits another application (Form DS-260) and appears for an interview at the embassy with jurisdiction over the foreign relative's residence.  *See* 22 C.F.R.

§ 42.62.  After the interview, "the consular office must [either] issue [or] refuse the visa."  *Id.* § 42.81(a).

In June 2021, Noori, a U.S. citizen, filed a Form I-130 on behalf of her father, who lives in Iran.  Pet. for Writ of Mandamus ("Pet.") ¶ 74, ECF No. 1.  USCIS approved the application, leading Noori's father to file his Form DS-260 in April 2022.  *Id.* ¶ 75–77.  In February 2023, a consular officer at the U.S. Embassy in Yerevan, Armenia interviewed Noori's father.  *Id.* ¶ 78.  The officer then informed him that the visa application was refused "pending further administrative processing."  *Id.* ¶ 80.  The application has remained in "administrative processing" ever since.  *Id.* ¶ 84.  Among other things, Plaintiffs allege that the delay in adjudicating this application has caused "severe emotional and financial strain on the Plaintiffs."  *Id.* ¶ 6.

About three months after the interview, Noori and her father sued Defendants, the Secretary of State, the Deputy Assistant Secretary for Visa Services, and the Consul General at the Embassy.  *See id.* ¶ 28–30.  Count One of their Petition seeks to compel Defendants to act on the visa application pursuant to the Mandamus Act, 28 U.S.C. § 1361.  *See* Pet. ¶ 112–30.  Count Two alleges that Defendants have unlawfully failed to act on the application in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).  *See id.* ¶ 131–59.  Count Three alleges that Defendants have unlawfully withheld action in violation of the APA's § 706(1).  *See id.* ¶ 147–58.  And Count Four alleges that Defendants have unlawfully delayed action, also in violation of the APA's § 706(1).  *See id.* ¶ 159–74.  Defendants move to dismiss on several grounds.  *See* ECF No. 7.

## II.    Legal Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'"  *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  "In

evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "While a court generally does not consider matters beyond the pleadings for a motion to dismiss, it may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Feng Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020) (citation omitted).  A court may also consider matters of which it can take judicial notice.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.    Analysis

For the reasons explained below, Plaintiffs' Petition does not state a claim that the adjudication of the visa application at issue has been unlawfully withheld or unreasonably delayed, as alleged in Counts One, Three and Four.[1]  And because the Court will dismiss the Petition on that

---

[1] Counts Three and Four, each brought under § 706(1) and seeking to compel agency action, are subject to the same analysis.  Section 706(1) provides a cause of action to compel agency action "unlawfully withheld or unreasonably delayed."  But Plaintiffs have not "provided any legal standard or argument distinguishing between" the two for their purposes here.  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 n.6 (D.D.C. 2021).  Thus, the "analysis of [Plaintiffs'] claim that agency action was unlawfully delayed . . . addresses the entirety of [their] § 706(1) claims to compel agency action."  *Id.*  Similarly, while Count One is brought under the Mandamus Act, courts evaluate that claim under the same framework as those brought under § 706(1).  *Penn v. Blinken*, No. 21-cv-1055 (TJK), 2022 WL 910525, at *7 (D.D.C. Mar. 29, 2022) ("The standard for reviewing agency delay is the same under both § 706(1) of the APA and the Mandamus Act." (cleaned up)).

ground, it need not resolve Defendants' remaining arguments for dismissal. *See Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6 (D.D.C. 2021) (declining to consider Government's consular-nonreviewability and redressability arguments after resolving unreasonable-delay case on the merits); *see also Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 n.7 (D.D.C. 2021) (similar).

The APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts review unreasonable-delay claims in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). "There is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir.1992)). Instead, Courts rely on the six "*TRAC* factors":

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting

---

Count Two fails to state a claim under § 706(2), but for a different reason. Plaintiffs themselves insist that "[t]here has been no final decision on [their] visa application." ECF No. 14 at 15. But to state a claim under that section, "the agency action in question must be final agency action." *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (citation omitted).

*TRAC*, 750 F.2d at 80).  Taken together, the *TRAC* factors strongly weigh in Defendants' favor. Thus, even accepting Plaintiffs' allegations as true, they are insufficient to state a claim for unreasonable delay.[2]

## A.    *TRAC* Factors 1 and 2

The first two *TRAC* factors are typically considered together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important."  *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  These factors ask the Court to determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp.3d 295, 300 (D.D.C. 2014).

Both factors favor Defendants.  "There is no congressionally imposed timeline" for the embassy to adjudicate the visa application.  *Bagherian*, 442 F. Supp. 3d at 95.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. 3d at 153–54.[3]  Thus, lacking a "set timeline, the Court looks to case law for

---

[2] Plaintiffs argue that dismissal would be "premature" at this stage because unreasonable-delay claims "require fact-based inquiries."  ECF No. 14 at 22–24.  But "[s]o long as a 'record contains enough facts to evaluate the *TRAC* factors' at the motion-to-dismiss stage, 'then a Court may appropriately decide to do just that.'"  *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *4 (D.D.C. Feb. 15, 2024) (quoting *DaCosta v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022)).  Thus, in this district, whether an alleged delay is unreasonable is a question routinely decided as a matter of law.  *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020); *Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020).

[3] The Petition repeatedly references language in the State Department's Foreign Affairs Manual establishing a "policy under which immediate relative . . . visas be processed within 30 days of receipt of the necessary information from the applicant."  9 FAM § 504.7-2.  But this policy is "nonbinding" and "insufficient to displace the significant discretion that Congress provided to the federal agencies tasked with processing immigration applicants and vetting them to protect the national security."  *Pourshakouri v. Pompeo*, No. 20-cv-402 (RJL), 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021).

guidance." *Dastagir*, 557 F. Supp. 3d at 165.  "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Lee*, 2024 WL 639635, at *5 (quoting *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)).  And delays of around two years are usually considered reasonable.  *See, e.g.*, *Ghadami*, 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law.").

Plaintiffs filed their Petition in May 2023.  But they did so only thirteen months after Mr. Noorijoshaghani's visa application was submitted, and three months after his interview.  "Courts measure the period of delay from the last government action to the issuance of the opinion." *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022).  Here, that waiting period comes out to just over a year, which does not approach an unreasonable delay under the relevant case law.  *Skalka*, 246 F. Supp. 3d at 154 ("[A] delay of [about two years] does not typically require judicial intervention.").  Factors one and two therefore favor Defendants.[4]

### B.    *TRAC* Factor 4

The fourth *TRAC* factor considers the effect of expedition on an agency's competing priorities.  *TRAC*, 750 F.2d at 80.  It often favors the agency and "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319.  In fact, so substantial is its weight that "[t]his Circuit has refused to grant relief" based on the fourth factor "even [when] all the other factors considered

---

[4] On top of all that, 8 U.S.C. § 1735(a) requires the Secretary of State to make a finding that an alien "from a country that is a state sponsor of international terrorism . . . does not pose a threat to the safety or national security of the United States."  Iran is such a country.  *See* U.S. Dep't of State, *Determination Pursuant to Section 6(i) of the Export Administration Act of 1979—Iran*, 49 Fed. Reg. 2836, Jan. 23, 1984.  This requirement further justifies the waiting period in this case.

in *TRAC* favored it." *Id.* (cleaned up).  That is so because courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)).

In this case, Plaintiffs "ask[] for just that." *Dastagir*, 557 F. Supp. 3d at 167.  They seek to compel Defendants to decide the visa application at issue in thirty days.  But because consular "processing capacity is presently a zero-sum game," *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (cleaned up), their requested relief would amount to a "judicial reordering[] of agency priorities," *Rahman*, 2023 WL 196428, at *4.  In other words, Plaintiffs seek to cut to the front of the line.  *Cf. Dastagir*, 557 F. Supp. 3d at 169 ("Dastagir offers no basis for judicial line-cutting those also waiting their turn.").  And even though "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150.  Therefore, the fourth *TRAC* factor also favors Defendants.

## C.    *TRAC* Factors 3 and 5

These factors involve "the interests prejudiced by delay," including "human health and welfare." *TRAC*, 750 F.3d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem).  Plaintiffs allege that their entire family is suffering "severe emotional distress and psychological harm," Pet. ¶ 93, and that "[t]he separation has taken a severe toll on Plaintiffs, mentally and emotionally," *id.* ¶ 100.  But Plaintiffs are not alone.  "While the Court does not doubt that [Plaintiffs] ha[ve] an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).  Plaintiffs' "allegations, standing alone, do not suggest [they] are in a worse position" than other visa applicants whose lives have been put on hold by a waiting period. *Lee*,

2024 WL 639635, at *7.  Thus, these factors largely do not weigh in Plaintiffs' favor because there is no reason why their private interests in "health and welfare" deserve special treatment relative to other visa applicants' interest in the same.  In any event, to the extent these *TRAC* factors weigh in Plaintiffs' favor, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'"  *Dastagir*, 557 F. Supp. 3d at 168 (quoting *Palakuru*, 521 F. Supp. at 53).

### D.     *TRAC* Factor 6

The sixth *TRAC* factor, which provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, weighs against Plaintiffs as well.  Although they allege an unreasonable delay, they do not allege that Defendants have engaged in any bad faith or impropriety.  *See generally* Pet. Therefore, "'the good faith of the agency in addressing the delay weighs against' relief." *Tate*, 513 F. Supp. 3d at 150 (quoting *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005)).

*     *     *

In summary, after weighing the *TRAC* factors, the Court has little difficulty concluding that Plaintiffs' Petition does not state a claim that the adjudication of their visa application has been unreasonably delayed.  In fact—unfortunately—their wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad*, 548 F. Supp. 3d at 169.  In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And they offer no reason for the Court to bump them to the front of the line.

**IV.     Conclusion**

For all these reasons, the Court will grant Defendants' motion and dismiss the case.  A

separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 5, 2024